RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

KIERAN O. CARTER
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 227
Washington, D.C.  20044
Tel. 202.616.1920
Fax 202.514.6866
Kieran.O.Carter@usdoj.gov

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ABRAHAM TAYLOR )<br>9 Creston Avenue )<br>Union, New Jersey 07083 )<br>)<br>and )<br>)<br>CHENTAY CONSULTING )<br>SERVICES, LLC, d/b/a )<br>CCS TAX SERVICES )<br>756 Springfield Avenue )<br>Irvington, New Jersey 07111, )<br>)<br>Defendants. )<br>_____ ) | Case No. |

**COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTION**

The United States of America, at the request of the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of the Treasury, and at the direction of the Attorney General of the United States, brings this suit to permanently enjoin the defendants, Abraham Taylor and

Chentay Consulting Services, LLC, *doing business as* CCS Tax Services, and all persons and entities in active concert or participation with them, from directly or indirectly:

(a) Preparing or filing, or assisting in the preparation or filing of any federal tax return for any other person or entity;

(b) Engaging in any conduct or activity subject to penalty under section 6701 of the Internal Revenue Code, *i.e.,* preparing or assisting others in the preparation of any tax form or other document to be used in connection with a material matter arising under the internal revenue laws and which the defendants know will (if so used) result in the understatement of tax liability;

(c) Engaging in any conduct or activity subject to penalty under section 6694 of the Internal Revenue Code by understating taxpayers' liabilities;

(d) Engaging in any conduct or activity subject to penalty under section 6695 of the Internal Revenue Code by negotiating a tax refund check;

(e) Engaging in conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws.

## Jurisdiction and Venue

1. Jurisdiction over this action is conferred on this Court by 28 U.S.C. §§ 1340 and 1345, and sections 7402(a), 7407 and 7408 of the Internal Revenue Code of 1986 (26 U.S.C.) ("IRC").

2. Venue is proper in this Court under 28 U.S.C. § 1391(b) because the defendants, Abraham Taylor and Chentay Consulting Services, LLC, *doing business as* CCS Consulting Services, reside or have their principal office within this judicial district.

## Defendants

3. The defendant, Abraham Taylor ("Taylor"), resides in Union, New Jersey, within this judicial district.

4. The defendant, Chentay Consulting Services, LP, doing business as CCS Consulting Services ("CCS"), has its principal office in Irvington, New Jersey, within this judicial district.

## Taylor's Tax Return Preparation Business

5. Taylor and CCS are tax return preparers within the meaning of IRC § 7701(a)(36) because they prepare other people's tax returns for compensation.

6. Taylor and his wife own CCS Consulting Services, but Taylor's wife is not involved in the operation of the business or preparing tax returns. In addition to preparing returns himself, Taylor supervises three other return preparers and two data entry clerks who work at CCS Consulting Services.

7. Taylor holds a Bachelor of Arts in Political Science and a Master's degree in Personnel Management. He began preparing returns in 2006 after learning how to prepare them from a friend. Taylor has attended H&R Block training in preparing tax returns, and has learned about developments in the tax laws through Drake Software.

## Taylor and CCS Were Previously Penalized for Unreasonably Understating Their Customer's Federal Income Tax Liabilities

8. The Internal Revenue Service has investigated and penalized Taylor and CCS in the past for filing returns that do not comply with the Internal Revenue Code.

9. In December 2011, the IRS investigated Taylor and CCS because they were claiming expenses and credits on taxpayers' federal income tax returns for 2008 and 2009, without receiving proper documentation from their customers. Specifically, Taylor and CCS claimed false or inflated educational credits, false or inflated Schedule C business losses, and false Schedule A unreimbursed employee business expenses on their customers' returns.

10. The 2011 investigation resulted in Taylor agreeing to an assessment of penalties against him for tax years 2008 and 2009 under 26 U.S.C. § 6694(a) for understating his customers' tax liabilities.

11. Despite the IRS' investigation and assessment of Section 6694(a) penalties, Taylor and CCS have continued to willfully understate their customers' federal income tax liabilities and claim inflated tax refunds for them. Taylor and CCS continue to use the very same false or inflated educational credits, false or inflated Schedule C business losses, and false Schedule A unreimbursed employee business expenses on their customers' returns.

### The IRS' Second Investigation into Taylor and CCS Consulting Services

12. The IRS audited or examined a total of 489 federal income tax returns prepared by the defendants for the tax years between 2010 and 2015, including participant audits and related pickup examinations and other audits through IRS Service Centers. **Of the 489 returns that were examined or audited, only two (2) were closed without changes**. This resulted in a 99% adjustment rate for 489 of the tax returns that were prepared by the defendants over six taxable years.

13. The total amount of the additional tax deficiencies determined by the IRS with respect to the 487 of 489 returns was $1,567,319, or approximately $3,205 per return.

14. While only 489 returns were examined or audited by the IRS, Taylor and CCS prepared 4,933 returns between 2011 and 2016. Thus, the resulting potential tax loss to the United States likely greatly exceeds the identified loss of $1,567,319.

**Taylor's Interview with the IRS**

15. On or about March 25, 2014, Internal Revenue Agent Donna Lamonna interviewed Taylor and advised him that he and CCS were the subjects of an investigation into their activities as tax return preparers.

16. In the March 25, 2014 interview, RA Lamonna discussed several topics with Taylor, including:

> a. The appropriate documentation that should be required from taxpayers before claiming educational expenses and credits, such as a Form 1098-T;
>
> b. The appropriate documentation that should be required from taxpayers before claiming dependents, such as a social security card, birth certificate, and proof that the dependent lived with the taxpayer; and
>
> c. The appropriate documentation that should be required from taxpayers before claiming Schedule A employee business expenses and other miscellaneous expenses.

17. Despite discussing the types of documentation that should be requested from taxpayers before claiming specific deductions and credits, Taylor and CCS have continued to claim the deductions and credits described above without the appropriate documentation. In many cases, the deductions and credits filed by Taylor and CCS still lack any documentation whatsoever, or contain falsified information.

**Taylor and CCS Use Multiple Schemes to Prepare
Their Customers' False Federal Income Tax Returns**

18. IRS audits of returns prepared by Taylor and CCS disclosed:

> a. False or inflated educational credits;
>
> b. False or nonexistent dependents; and

5

    c. False Schedule A unreimbursed employee business expenses.

 19. Additionally, Taylor deposited his customer's tax refunds into his own accounts in violation of 26 U.S.C. § 6695(f).

**Taylor and CCS Prepared and Filed Returns That Claimed False Education Credits**

 20. Taylor and CCS have repeatedly and continually falsely claimed education credits or expenses on behalf of their customers to reduce their customers' tax liabilities or generate erroneous refunds for their customers to which they were not entitled.

 21. The American Opportunity Tax Credit is a credit for qualified education expenses paid for an eligible student for the first four years of higher education. The taxpayer can claim it on behalf of the taxpayer herself, a spouse or a dependent. Eligibility for the American Opportunity Tax Credit can be confirmed by reviewing an eligible person's IRS Form 1098-T tuition statement.

 22. Separately, taxpayers may also claim a deduction for tuition expenses for higher education. This deduction can also be confirmed by a taxpayer's 1098-T.

 23. For example, Taylor and CCS prepared and filed tax returns for a husband and wife for the 2012 and 2013 tax years that claimed an education credit and the American Opportunity Tax Credit. On the return for 2012, Taylor claimed that the wife attended Essex Community College and that a Form 1098-T was received showing payments to the college. On the return for 2013, Taylor claimed that the wife attended "College Network" and received a Form 1098-T. However, neither institution issued a 1098-T to the taxpayers, and the taxpayers could not produce documentation showing that the wife attended those schools. Further, the EIN listed for "College Network" does not exist.

 24. In another example, Taylor and CCS prepared and filed tax returns for a customer that claimed the education credit and the American Opportunity Tax Credit. The returns claimed

that the customer went to "Lehigh Community County College" in 2013 and "Lehigh Community College" in 2012. However, neither of these colleges exist, and the EINs on the Form 8863 associated with these two colleges are false. According to an interview with customer conducted by an IRS employee, the customer stated that she never went to college. The customer further stated that she provided her W-2 to Taylor but did not provide any other documentation to him.

25. In his interview with the IRS in March 2014, Taylor admitted that he had not completed any research to determine the requirements for the American Opportunity Credit. At that time, RA Lamonna gave Taylor handouts with information regarding the requirements for claiming education credits. Despite being directly informed of these requirements, Taylor and CCS continued to falsely claim education credits or expenses on behalf of their customers in for the 2014 and 2015 tax years.

26. The IRS reviewed 50 returns prepared by Taylor and CCS that claimed an education deduction, education credit, and/or the American Opportunity Tax Credit for the 2015 tax year. The IRS compared the claimed expenses on the tax returns with Form 1098-Ts issued by higher education institutions for the taxpayers, spouses, or dependents. The IRS determined that only 4 of the 50 returns it reviewed properly claimed the education deduction and/or American Opportunity Tax Credit. Of the 50 returns, a portion of the credit was falsely claimed on 8 of the 50 returns analyzed, and 100% of the credit was falsely claimed on 38 of the 50 returns analyzed. Taylor indicated on 47 of the 50 returns at a Form 1098-T was received when in fact one was never issued.

27. The IRS also reviewed 10 returns prepared by Taylor and CCS that claimed an education deduction, credit and/or the American Opportunity Tax Credit for the 2014 tax year.

The IRS compared the claimed expenses on the tax returns with Form 1098-Ts issued by higher education institutions for the taxpayers, spouses, or dependents. The IRS determined that none of the 10 returns it reviewed properly claimed the education deduction and/or American Opportunity Tax Credit. Of the 10 returns, a portion of the credit was falsely claimed on 3 of the 10 returns analyzed, and 100% of the credit was falsely claimed on the remaining 7 returns. Taylor indicated on 9 out of 10 of those returns that a Form 1098-T was received when in fact one was never issued.

### Taylor and CCS Prepared and Filed Returns that Claimed False Dependents

28. Taylor and CCS repeatedly and continually prepared returns for their customers that included false or nonexistent dependents, which resulted in understatements of tax liabilities and inflated tax refunds.

29. For example, in February 2014, a customer met with Taylor and CCS to receive an estimate of what his tax refund would be. After the meeting, the customer told Taylor that would not use Taylor or CCS, and would file his return himself. Without the customer's permission, Taylor filed a return for the customer and claimed that the customer was single but had a dependent. The customer was married and had no dependents, and never told Taylor that he had a dependent. The customer later discovered that Taylor also filed an income tax return for the customer for 2015 that again claimed the customer was single with a dependent, but named a different dependent that the customer also did not know. Further, Taylor deposited the refunds into his own account and never provided them to the customer.

30. In another example, a customer met with Taylor and another CCS employee in 2013 to prepare her 2012 income tax return. The customer told Taylor and the CCS employee that she was single and had no children. Taylor and CCS prepared and filed a tax return for the

customer that claimed she had a dependent who was her niece, in order to qualify for the Earned Income Tax Credit. The customer does not know the individual claimed as her dependent and did not give Taylor or CCS permission to claim a dependent on her tax return.

31. In a third example, a customer met with Taylor and CCS to prepare his 2011 return. Taylor said he was busy and told the customer that he would have to file an extension. Later, the customer learned that Taylor never filed for an extension, but instead filed the customer's return without his permission, and claimed that the customer was single but had a child. The customer was actually married and did not have any children, and did not know who the child was that was claimed on his return.

### Taylor and CCS Prepared and Filed Returns That Claimed False Unreimbursed Employee Business Expenses

32. Taylor and CCS repeatedly and continually prepared returns for their customers that included false claims for unreimbursed employee business expenses, which resulted in understatements of tax liabilities and inflated tax refunds.

33. For example, Taylor and CCS prepared and filed tax returns for one customer that claimed $23,715 in unreimbursed employee business expenses in 2012 (for mileage, parking, tolls, and general business expenses) and $15,739 in 2013 (for a license fee, uniform, and job supplies). When an IRS employee asked Taylor for the documents in his possession to substantiate the claimed business expenses, Taylor provided the IRS employee with mileage logs where the pages almost all appeared to be duplicates. The logs did not specify the job or person that incurred the expense. Further, the customer stated in an interview with an IRS employee that the customer never provided Taylor with any receipts. After an audit by the IRS of the customer's 2012 and 2013 returns, only $451 of the 2012 unreimbursed expenses were allowed and only $2,321 of the 2013 unreimbursed expenses were allowed.

34. In another example, Taylor and CCS prepared and filed tax returns for a husband and wife that claimed $25,407 in unreimbursed employee business expenses in 2012 (for mileage, parking, tolls, and general business expenses) and $21,345 in 2013. The husband and wife did not provide any receipts to Taylor or to the IRS. After an audit, only $2,368.43 of the business expenses for 2012 were allowed and $2,942.43 of the business expenses were allowed for 2013.

### Taylor Deposited His Customers' Tax Refunds Into His Own Accounts in Violation of 26 U.S.C. § 6695(f)

35. Section 6695(f) of the Internal Revenue Code imposes a $500 penalty on tax return preparers such as Taylor and CCS who negotiate a tax refund check (including direct deposit) into an account with the name of the preparer as the name or one of the names on the account. The penalty applies even if the customer has designated the return preparer as his or her authorized representative on a power of attorney form.

36. For example, Taylor prepared a return for a customer in 2012 and told the customer that she would receive a refund of $1,473.05. Taylor provided the customer with a "copy" of her return that showed that she was due a refund of $1,662, and that after the return preparation fee, that the customer would receive $1,473.05. However, the return actually filed by Taylor claimed a refund of $3,226. Bank records show that Taylor received the $3,226 refund into his own account, and then made a withdrawal from his personal bank account at Wells Fargo to pay the customer her "refund" of $1,483.00. The customer received a cashier's check from Wells Fargo Bank for $1,473.00.

37. In another example, Taylor prepared a 2013 federal income tax return for two married customers, and directed the refund to be sent to a bank account that was not the customers' account. Taylor then gave the taxpayers their refund in the form of a personal check.

38. Taylor's bank account at TD Bank shows that he deposited at least 12 of his customer's refund checks into his own bank account in 2013 and at least 5 of his customer's refund checks into his own bank account in 2014.

39. Taylor's bank account at Wells Fargo shows that Taylor deposited customers' refund checks into his Wells Fargo bank account in 2012, 2013, 2014, and 2015.

## Harm to the Government

40. As evidenced by the results of the IRS examinations of many of Taylor's and CCS's customers' federal income tax returns for the 2011 through 2015 tax years, Taylor and CCS have engaged in a pattern of preparing returns with inflated and unsubstantiated education credits, false dependents, and unsubstantiated business expenses.

41. Taylor and CCS have inflated their customers' refunds and diverted portions of their customers' refunds to their own accounts or to pay their tax preparation fee.

42. The tax revenue loss to the Government with respect to the 487 of 489 returns that were examined or audited by the IRS was $1,567,319, or approximately $3,205 per return. However, Taylor and CCS prepared 4,933 returns between 2011 and 2016. Thus, the potential tax loss to the United States is likely much higher than the identified loss of $1,567,319.

43. Taylor and CCS continue to prepare returns to this day.

## Count I: Injunction under IRC § 7408

44. The United States incorporates by reference the allegations made in paragraphs 1 through 43, above, as if fully set forth herein.

45. Section 7408 of the Internal Revenue authorizes a court to enjoin persons who have engaged in conduct subject to penalty under IRC § 6701 from further engaging in such conduct. Section 6701 of the Internal Revenue Code imposes a penalty on any person who aids

11

in the preparation of any portion of a return or other document, who knows the portion or document will be used in connection with any material matter under the internal revenue laws, and who knows the portion or document (if so used) would result in understating another person's tax liability.

46. Taylor and CCS prepare tax returns and other documents for customers that are intended to be used (and are used) in connection with material matters arising under the internal revenue laws.

47. Taylor and CCS know that these returns and other documents will result in understatements of their customers' tax liabilities. Taylor and CCS have engaged and continue to engage in conduct subject to penalty under IRC § 6701.

48. Taylor and CCS should therefore be enjoined under IRC § 7408 from engaging in conduct subject to penalty under IRC § 6701.

## Count II: Injunction under IRC § 7407

49. The United States incorporates by reference the allegations made in paragraphs 1 through 48, above, as if fully set forth herein.

50. Section 7407 of the Internal Revenue Code authorizes a court to enjoin a person from, among other things:

(1) engaging in conduct subject to penalty under IRC § 6694 (which penalizes a return preparer who prepares or submits a return or claim that contains a frivolous or unrealistic position, or who willfully attempts to understate a customer's tax liability on a return or claim, or who makes an understatement on a return due to reckless or intentional disregard of rules or regulations);

 (2) engaging in conduct subject to penalty under IRC § 6695 (which penalizes a return preparer who negotiates a check made in respect of an internal revenue tax which is issued to a taxpayer other than the return preparer);

 (3) engaging in any other fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws.

If the return preparer's misconduct is continual or repeated, and the court finds that a narrower injunction (*i.e.*, one prohibiting specific enumerated conduct) would not be sufficient to prevent the preparer's interference with the proper administration of the federal tax laws, the court may enjoin the person from further acting as a return preparer.

 51. Taylor and CCS have continually and repeatedly prepared and submitted federal tax returns that contain unrealistic and frivolous positions, and that willfully attempt to understate their customers' correct tax liabilities, and thus have engaged in conduct subject to penalty under IRC § 6694.

 52. As a tax return preparers, Taylor and CCS have continually and repeatedly deposited checks into their own accounts that were made in respect of an internal revenue tax which were issued to a taxpayer other than Taylor and CCS, thereby subjecting them to penalty under IRC § 6695(f).

 53. Taylor and CCS have continually and repeatedly engaged in other deceptive conduct that substantially interferes with the proper administration of the internal revenue laws.

### Count III: Injunction under IRC § 7402

 54. The United States incorporates by reference the allegations made in paragraphs 1 through 53, above, as if fully set forth herein.

55. Section 7402(a) of the Internal Revenue Code authorize courts to issue injunctions "as may be necessary or appropriate for the enforcement of the internal revenue laws." The remedies available to the United States under section 7402(a) "are in addition to and not exclusive of any and all other remedies of the United States in such courts . . ." IRC § 7402(a).

56. Taylor and CCS have engaged in conduct that substantially interferes with the administration and enforcement of the internal revenue laws, and they are likely to continue to engage in such conduct unless they are enjoined. Taylor and CCS continue to prepare and file false tax returns that contain fabricated and unsubstantiated deductions and expenses even after they became aware that they were under investigation for preparing such returns.

57. Taylor and CCS' conduct is causing irreparable injury to the United States and an injunction under IRC § 7402(a) is necessary and appropriate. If Taylor and CCS are not enjoined, the United States will suffer irreparable injury by erroneously providing tax refunds to persons who are not entitled to receive them or who are not entitled to the inflated amounts.

58. If Taylor and CCS are not enjoined, the United States will suffer irreparable injury from Taylor and CCS continuing to prepare double sets of returns and submitting false claims for refund to the IRS that claim refunds in excess of what was reported to the taxpayer.

59. Unless Taylor and CCS are enjoined, the IRS will have to devote substantial time and resources to identifying and locating their customers, and then examine their customers' tax returns and liabilities. Pursuing all of Taylor and CCS's customers may be impossible given the IRS's limited resources.

60.     Enjoining Taylor and CCS from acting as federal income tax return preparers is in the public interest because an injunction will stop their illegal conduct and the harm it causes the United States.

WHEREFORE, the plaintiff, the United States of America, respectfully prays as follows:

A.  That the court find that the defendants, Abraham Taylor and Chentay Consulting Services LLC *doing business as* CCS Tax Services, continually and repeatedly engaged in conduct subject to penalty under IRC §§ 6694 and 6695, and that injunctive relief is appropriate under IRC § 7407 to prohibit Taylor and CCS from acting as tax return preparers because an injunction limited to prohibiting such conduct would not be sufficient to prevent their interference with the proper administration of the internal revenue laws;

B.  That the court find that the defendants, Abraham Taylor and Chentay Consulting Services LLC *doing business as* CCS Tax Services, have engaged in conduct subject to penalty under IRC § 6701, and that injunctive relief is appropriate under IRC § 7408 to prevent them from engaging in further such conduct;

C.  That the court find that the defendants, Abraham Taylor and Chentay Consulting Services LLC *doing business as* CCS Tax Services, have engaged in conduct that substantially interferes with the proper administration of the internal revenue laws, and that injunctive relief against them is appropriate to prevent the recurrence of that conduct pursuant to the court's inherent equity powers and IRC § 7402(a);

D.  That the court, pursuant to IRC §§ 7402 and 7407, enter a permanent injunction barring the defendants, Abraham Taylor and Chentay Consulting Services LLC *doing business as* CCS Tax Services, from acting as federal income tax return preparers and from preparing or filing returns for others, and from representing customers before the IRS;

E.  That the court, pursuant to IRC § 7402(a), enter a mandatory injunction requiring the defendants, Abraham Taylor and Chentay Consulting Services LLC *doing business as* CCS Tax Services, within fifteen days of the entry of any injunction against them in this action, to contact by United States mail all persons for whom they has prepared a federal tax return or claim for refund since January 1, 2011, to inform them of the court's findings in this matter, and enclose a copy of the injunction entered against them;

F.  That the court authorize the United States to engage in post-judgment discovery to monitor compliance with the terms of any injunction entered against the defendants, Abraham Taylor and Chentay Consulting Services LLC *doing business as* CCS Tax Services;

G.  That the court retain jurisdiction over this civil action for the purpose of enforcing the terms of any injunction entered against the defendants, Abraham Taylor and Chentay Consulting Services LLC *doing business as* CCS Tax Services; and

H.  For such other and further relief as the court may deem to be appropriate.


Dated: February 23, 2018

CRAIG CARPENITO
United States Attorney

*/s/ David E. Dauenheimer*
DAVID E. DAUENHEIMER
Deputy Chief, Civil Division
United States Attorney's Office
970 Broad Street, Suite 700
Newark, NJ 07102
Tel: (973) 645-2925
Fax: (973) 297-2010
David.Dauenheimer2@usdoj.gov

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

*/s/ Kieran O. Carter*
KIERAN O. CARTER
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 227
Washington, DC 20044
Tel: (202) 616-1920
Fax: (202) 514-6866
Kieran.O.Carter@usdoj.gov

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
United States of America

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Kieran O. Carter, U.S. Department of Justice, Tax Division
P.O. Box 227, Washington, DC 20044; (202) 616-1920

## DEFENDANTS
Abraham Taylor, 9 Creston Avenue, Union, NJ 07083; and Chentay Consulting Services, LLC, doing business as CCS Tax Services, 756 Springfield Avenue, Irvington, NJ 07083

County of Residence of First Listed Defendant   Union County, New Jersey
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
n/a

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [X] 1  U.S. Government Plaintiff
- [ ] 2  U.S. Government Defendant
- [ ] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*    Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| | | | | | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | [X] 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
26 U.S.C. 7402, 7407, and 7408
Brief description of cause:
Suit to enjoin tax return preparers

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
**DEMAND $** 0.00
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes [X] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE 02/23/2018
SIGNATURE OF ATTORNEY OF RECORD
*/s/ Kieran O. Carter/*

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____